
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Dependency of | ) | |
| | ) | No.  41081-1-III |
| J. L. J. C. | ) | (Consolidated with |
| | ) | No.  41082-0-III) |
| and | ) | |
| | ) | |
| L. D. J. C. | ) | UNPUBLISHED OPINION |

STAAB, C.J. — C.A., (Mother) appeals the trial court's order of dependency and disposition that found her children dependent and required out-of-home placement.  She assigns error to numerous findings of fact and conclusions of law, arguing that the findings are improperly based on hearsay introduced for a limited purpose and therefore not supported by substantial evidence.  She further contends that the remaining findings fail to support the court's conclusions that the children were dependent and out-of-home placement was necessary.

The Department of Children, Youth, and Families (the Department) acknowledges that the trial court erred by relying on hearsay admitted through expert witnesses as substantive evidence and concedes that some of the findings are unsupported by the evidence.  Nevertheless, the Department contends the majority of challenged findings are

supported by admissible evidence, the court's consideration of hearsay did not materially affect the outcome, and the valid findings support the court's conclusions.

We agree with the Department and affirm.

BACKGROUND

C.A. is the mother of J.L., born in 2014, and L.D., born in 2016. At the time of the fact-finding hearing, the children were 10 and 8 years old. The children's father entered into an agreed order of dependency.

The Department received an "intake" from Adult Protective Services (APS) that young children had been found staying unsupervised in the home of their client who is a developmentally disabled adult. The disabled adult lived in a home on Cashmere Street with his mother who acted as his caregiver. An APS investigator visited the home to investigate a complaint that the adult client had been sexually assaulted by the children; a complaint that was determined to be unfounded.

Nevertheless, the APS investigator questioned the children about the whereabouts of their parents. When the children indicated they did not know where their parents were or how they could be contacted, the APS investigator contacted Child Protective Services (CPS). A CPS investigator arrived at the house and the two investigators continued questioning the children at a nearby park.

Based on the APS response to the allegation and concern over the lack of supervision for the children, an official referral to the Department was made. The

Department began an investigation, with the CPS investigator as the assigned social worker. Aside from the lack of supervision, the referral was based on a concern about the children's living conditions, described as unsafe and unsanitary.

*Dependency Petition and Shelter Care Hearing*

A dependency petition was eventually filed, and the Department requested out-of-home placement after efforts to prevent removal failed. The Department requested shelter care and dependency based on allegations that the Mother could not control her own behavior and her behavior impacted the children's safety. The petition included detailed allegations based on the CPS investigator's observations of the home, interviews with the Mother, father, various service providers, and other witnesses who were in contact with the family. The petition asserted that removal was necessary due to the parent's ongoing drug use and failure to supervise the children who were living in a home where individuals frequented including a disabled adult who was aggressive toward the children.

At the shelter care hearing, both parents agreed to shelter care and the children were placed in their uncle's care. Specifically, the shelter care hearing order contained the following finding:

> Both parents admit to current and active drug use. Both parents also
> indicate there is drug use inside the home and individuals that frequent the
> home which may put the children at risk for imminent physical harm. A
> Voluntary Placement Agreement was signed by both parents with a plan for
> stable housing and substance use disorder treatment, however, neither

3

parent was willing to participate despite efforts by providers and the Department to engage with both Parent 1 and Parent 2.

The history of drug use by both parents coupled with the unstable living environment, puts the child at risk. Substance use, such as methamphetamine, can me [sic] a parent unavailable due to the impact the drug has on a parent's mind, which creates a risk of imminent harm.

A disabled adult also resides in the home. He is aggressive towards the child and continues to be left unsupervised with the children.

The home has been observed to be unsanitary with animal feces and the smell of animal urine inside the home, specifically where the child sleeps. There is also a dog inside the home that bit one the child's ear while they slept and neither parent was present nor did either parent take the child to be evaluated for the injury.

Clerk's Papers (CP) at 42 (sealed).

*Trial*

A fact-finding bench trial was held on the dependency petition. The State presented 13 witnesses, including: toxicology experts to introduce positive drug test results, community resource providers, family members, a newly-assigned social worker, an APS investigator, and the Mother. Despite having signed the declaration in support of the petition and shelter care request, the initial CPS investigator did not testify at trial. Following the trial, the court entered detailed findings of fact and conclusions of law, finding the children dependent and ordering out-of-home placement.

The parties are familiar with the trial record and a detailed summary of the evidence presented over the two-day trial is unnecessary. Instead, we focus on the evidence and findings disputed by the Mother.

4

The Mother challenges four categories of hearsay: (1) statements introduced through the APS investigator about comments made by the Cashmere Street homeowner and the children while he was at the house, (2) statements attributable to the CPS investigator who did not testify at trial, (3) statements from the children's school, related through the testimony of their uncle, about pickup and attendance, and (4) the contents of CPS's file and investigation on the mother, related through the testimony of the social worker, who had only recently been appointed to the case and had no first-hand knowledge.

Following trial, the court entered detailed findings of fact and conclusions of law.

ANALYSIS

The Mother assigns error to 16 findings of fact and argues that these findings are not supported by substantial evidence because they are based directly or indirectly on hearsay introduced for limited purposes. She further alleges that the trial court's reliance on hearsay as substantive evidence requires reversal because there is a reasonable probability that the outcome of the trial was materially affected by the hearsay evidence.

*A. Standard of Review and Legal Principles*

We review a trial court's findings of fact to determine whether they are supported by substantial evidence. *In re Parental Rts. to D.H.*, 195 Wn.2d 710, 718, 464 P.3d 215 (2020). Unchallenged findings and challenged findings that are supported by substantial evidence are treated as verities on appeal. *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d

147 (2004). "Substantial evidence" requires us to determine if the evidence, when viewed in the light most favorable to the prevailing party, is "sufficient to persuade a rational, fair-minded person of the truth of the finding." *Id*. We consider the evidence and draw inferences therefrom in the light most favorable to the prevailing party. *In re Dependency of M.L.W.*, 28 Wn. App. 2d 252, 260, 535 P.3d 491 (2023). We will not reweigh the evidence or determine witness credibility on appeal. *In re Welfare of X.T.*, 174 Wn. App. 733, 737, 300 P.3d 824 (2013). Conclusions of law are reviewed de novo to determine if they are supported by the findings and a correct statement of the law. *State v. Pippin*, 200 Wn. App. 826, 834, 403 P.3d 907 (2017).

A "dependent child" is one who has "no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development." RCW 13.34.030(6)(c).

A court has broad discretion in dependency proceedings to determine whether there exists a risk of harm justifying dependency. *X.T.*, 174 Wn. App. at 738. Proof of actual harm is not required; a court may rely on a danger of harm to find dependency. *Id*. at 737. However, "such discretion does not permit juvenile courts to disregard evidence rules, especially where the deprivation of parental rights is involved." *Id*. at 738.

The rules of evidence apply at dependency hearings. RCW 13.34.110(1). Parents "should not be deprived of their parental rights [based] on hearsay." *In re Welfare of*

6

*Ross*, 45 Wn.2d 654, 655-56, 277 P.2d 335 (1954). Hearsay is an out-of-court statement

offered to prove the truth of the matter asserted. ER 801(c). Hearsay is inadmissible

unless an exception applies. ER 802. One such exception grants a trial court discretion

to allow an expert witness to relay hearsay statements on direct examination to explain

the basis of the expert's opinion. ER 705; *In re Dependency of A.C.*, 1 Wn.3d 186, 192,

525 P.3d 177 (2023). While experts such as social workers may testify to hearsay that

supports their opinion, "a judge cannot rely on that hearsay as substantive evidence." *Id*.

### B. Unsupported Findings

The Department concedes that the following challenged findings are based in

whole or in part on hearsay:

> 2.2.13. [The children] were unsure and could not provide specific information when asked when they had seen their mother last.
>
> 2.2.14. The children were unsure of how to contact [the Mother].
>
> 2.2.15. The CPS Investigator was able to confirm that there was food in the house, but the home was kept in an unsanitary condition with dog feces on the carpet and *on the foam pad upon which the children sleep*.
>
> . . . .
>
> 2.2.17. When the CPS investigator . . . had contact with [the Mother] to discuss the allegations and living conditions, she advised that the children had been in the father's care for about a month.
>
> . . . .
>
> 2.2.43. The school has reached out to [the children's uncle] when the child had not been picked up after school or when there were concerns with attendance.

CP at 207, 209.

As to findings 2.2.13, 2.2.14, 2.2.17, and 2.2.43, we accept the State's concession and agree that these findings were based on hearsay statements that were either inadmissible or admitted for a limited purpose. Additionally, the findings are unsupported by substantial evidence.

With respect to finding 2.2.15, the Mother argues this finding relies on hearsay because the source of the information is from the CPS investigator who did not testify at trial. The Department concedes that while the CPS investigator's observations concerning the condition of the home are inadmissible hearsay, other evidence supports the finding except for allegations that feces was found on the pad where the children were sleeping. We agree with the Department.

The APS investigator testified at trial that he visited the Cashmere Street house the same day as the CPS investigator. The APS investigator walked through the entire residence and testified he observed that the children slept on a "filthy" pad on the floor without sheets or blankets, the carpet was littered with dog feces, and the home smelled strongly of both feces and urine. Admittedly, the APS investigator did not observe feces on the mattress itself. In addition, the Mother admitted there was feces throughout the home. While substantial evidence does not support the finding that there were feces on the pad itself, this is of minor significance to the general finding that the house was unsanitary, which was supported by admissible testimony.

*C. Supported Findings*

Other than the unsupported findings noted above, the Mother assigns error to 11 other findings of fact. We decline to address some of the challenged findings because either the Mother did not raise a hearsay objection below or did not devote a section in her brief to the challenged findings. The challenged findings we consider are supported by substantial evidence.

The Mother argues finding 2.2.12 is based on inadmissible hearsay. The court found that "The CPS investigator . . . was able to identify and speak to both the children [ ] who confirmed that they stay in the home." CP at 207. The Mother argues that finding 2.2.12 is based on inadmissible hearsay because it relies on the reported observations from the CPS investigator, who did not testify at trial. The Department concedes that any observations by the CPS investigator are hearsay. Nevertheless, we agree with the Department that substantial evidence still supports the finding.

As the Department points out, the Mother never disputed that the children lived at the Cashmere Street home prior to removal. Indeed, the Mother testified that after she left treatment in May, she met the Cashmere Street homeowner who "gave [her] a place to stay with [her] kids." Rep. of Proc. (RP) at 362. Accordingly, the primary focus of this finding is supported by substantial non-hearsay evidence.

The Mother challenges two findings, 2.2.16 and 2.2.74, which she claims are based on hearsay evidence introduced through the testimony of the social worker.

9

We decline to review the Mother's challenges to these two findings because the hearsay issues she raises on appeal were not preserved below. The Mother did not object during the social worker's testimony. Nor is there any record of her objecting to the proposed findings. To preserve an evidentiary objection for appeal, the appellant must make a specific objection before the trial court. ER 103(a)(1); *State v. Harris*, 154 Wn. App. 87, 94, 224 P.3d 830 (2010). We generally decline to consider evidentiary issues that are not preserved at trial. *See* RAP 2.5(a).

Next, we consider challenged finding 2.2.18, which states "[The Mother] reported that a lot of people live in the home, and they are all using drugs." CP at 208. The Mother argues that this finding is based on hearsay because it relies on the Department's leading question of whether the Mother remembered reporting to the CPS investigator that there was a lot of traffic and drugs in the house.[1] The Department concedes that the CPS investigator's observations or his conversations with the Mother are hearsay evidence; however, it argues that the finding is supported by admitted evidence. We agree.

The Mother testified that there were people in and out of the Cashmere Street house and that she did not have any control over who came into the house. Further, during her substance use disorder evaluation, she admitted the Cashmere Street home was

---

[1] The Department asked whether the Mother remembered "reporting to the social worker that there was a lot of people living in the home of Ms. Lewis[ ] and they all use drugs?" RP at 89-90.

"not a safe place." Ex. 13 at 11. As to her own drug use, she admitted, "I live with it, all the people I know use [drugs]." Ex. 13 at 6. Substantial evidence supports finding 2.2.18. Additionally, in unchallenged finding 2.2.64, the court made an almost identical unchallenged finding: "[the Mother] is not living in a sober environment, and people are actively using controlled substances." CP at 211.

Finally, the Mother assigns error to eight findings, 2.2.75 through 2.2.80 and 2.2.82, but does not present separate argument in her brief that these findings are unsupported. Instead, the Mother seems to argue that these findings summarize the court's primary concern, that the Mother failed to supervise her children because of ongoing drug use, and these findings were indirectly based on the hearsay statements she challenges above.

While we consider these particular findings in determining whether the unsupported findings and hearsay materially affected the outcome of the trial, the failure to provide an argument waives any assignment of error as to whether the findings are supported by substantial evidence. *State v. Saint-Louis*, 188 Wn. App. 905, 909 n.1, 355 P.3d 345 (2015).

### D. Material Affect on Outcome of the Trial

The Mother argues the trial court's order of dependency and disposition must be reversed because there is a reasonable probability that the hearsay materially affected the outcome of the trial. We disagree.

11

The Washington Supreme Court squarely addressed the applicable standard of review in *A.C.*, 1 Wn.3d 186. The Court confirmed that an improper reliance on hearsay as substantive evidence is a nonconstitutional evidentiary error governed by the materially affected standard of harmless error review. *Id.* at 195. Under this standard, "'[a]n erroneous admission of evidence is not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been *materially affected* had the error not occurred.'" *Id.* at 194 (alteration in original) (internal quotation marks omitted) (quoting *X.T.*, 174 Wn. App. at 739). Stated differently, the error "'constitutes harmless error if the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole.'" *Id.* at 194 (quoting *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997)). The test thus focuses specifically on whether it was reasonably probable that, absent the error, the outcome would have been different. *Id.* at 195.

In *A.C.* the court found that the trial court considered an enormous amount of hearsay evidence beyond the limited purpose for which it was admitted. *Id.* at 196. The court concluded that the hearsay evidence was not slightly prejudicial but instead affected the trial court's view of all the admissible evidence. *Id.* at 197. Ultimately, the court concluded that the error required reversal because the weight of inadmissible hearsay considered by the trial court had a reasonable probability of materially affecting the outcome of the hearing. *Id.* at 198.

12

In this case, the findings that were impermissibly based on hearsay were minor in significance and there is not a reasonable probability that the outcome of the trial was materially affected by the court's consideration of the hearsay evidence. Of the 84 findings made by the court, four-and-a-half were improperly based on hearsay. The unsupported findings were minor and used to support the court's primary findings about the mother's drug use and failure to supervise her children. These primary findings were supported by other findings and evidence.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Murphy, J.